GEORGE CHESTERMAN et al. *v.* GEORGE C. EYLAND; MARY C. TIMPSON, Appellant, *v.* GEORGE W. LANE, late Chamberlain, etc., et al., Respondents.

The old rule of the Court of Chancery (180) providing for the investment of funds paid into court, where no direction as to it is contained in the decree, is still in force, modified only by the rule of the Supreme Court (Rule 82, of 1871 and 1874; Rule 73, of 1877) prescribing the place of deposit of the funds while on deposit.

The share of certain infant parties in the proceeds of a sale under a judgment in a partition suit was brought into court and paid over to the chamberlain of the city of New York in trust for the infants; no order was made directing as to its investment. The chamberlain deposited the money in bank for a short time. He held in trust a mortgage upon certain premises in said city, and being ordered to pay over the trust fund to the person entitled thereto, in accordance with the custom of his office, he used a portion of the money so deposited in the partition suit to make the payments, crediting the suit with an equivalent interest in the mortgage. At the time of the transaction the mortgage was sufficient security for the amount unpaid thereon; the interest was promptly paid and the obligor in the accompanying bond was responsible. The chamberlain passed the securities over to his successor. A severe depreciation in the values of real estate thereafter occurred and a heavy assessment was imposed upon the property; the mortgagor thereupon abandoned the payment of interest and the chamberlain, without order of the court, foreclosed the mortgage, bid in the property, and holds it for the benefit of those interested in the fund, the result being a substantial total loss thereof. *Held,* that an application of one of the parties interested for an order requiring the late and present chamberlain to pay over her portion was properly denied; that the provisions of the Revised Statutes in reference to investing the shares of infants on partition sales (2 R. S. 327, 328, §§ 64, 68, 70) apply to cases where the court by an order directs an investment, and do not control the action of the officer in the absence of such special direction; that then the investment is governed by the old Chancery rule (180); that although the deposit was made for a time in a bank in violation of the rule of the Supreme Court (82), as this violation did no harm it did not render the chamberlain liable; that there was no legal objection to the practice adopted in the chamberlain's office of aggregating in one mortgage the funds of several beneficiaries.

At the time of the investment in said mortgage there were taxes in arrears upon the premises. As soon as this was ascertained by the chamberlain, the amount necessary to pay them was called for and they were

paid in full.   *Held,* that this did not impose a personal liability upon that officer.

Also *held,* that the foreclosure of the mortgage was not a discharge thereof within the provision of the statute (2 R. S. 328, § 71) prohibiting a discharge save by order of the court; and that while it would have been better to have asked the direction of the court, the foreclosure without it was not improper or illegal.

(Argued June 3, 1880 ; decided June 15, 1880.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, affirming an order of Special Term, which denied a motion on behalf of Mary C. Timpson, one of the defendants herein, for an order requiring George W. Lane, late chamberlain of the city of New York, and J. Nelson Tappan, chamberlain, to pay to her certain moneys deposited to her credit with the former as chamberlain. (Reported below, 17 Hun, 520.)

The nature of the action and the material facts appear in the opinion.

*Edward F. Brown* for appellant. It was a clear violation of duty and breach of trust on the part of Mr. Lane, as city chamberlain, to use the plaintiff's money, to comply with orders of the court in favor of third persons having no interest in this fund. (Supreme Court Rules of 1849, rule 83 ; Voorhies' Code of 1851, p. 356 ; Rule 81 of 1858 ; Voorhies' Code of 1860, p. 638 ; Rule 82 of 1871 ; Voorhies' Code of 1872, p. 36 ; Rule 82 of 1875 ; Rule 73 of 1878.) The investments being unauthorized the *cestui que trust* can reject them, even though they were intrinsically good, and made in perfect good faith. (*King* v. *Talbot,* 40 N. Y. 76 ; Perry on Trusts, § 460 ; 3 R. S. [5th ed.] 616, § 84.) The chamberlain did an unlawful act in investing the money as he did. (Rule of Court of Chancery, 180 ; 3 R. S. [5th ed.] 615, § 78 ; id. 618, § 84 ; Rules of 1844, p. 133 ; Laws of 1847, p. 340, § 71 ; Laws of 1848, p. 404.)

*Charles H. Woodruff* for respondents. Mr. Lane, in invest-

ing upon bond and mortgage the funds deposited with him, conformed to the statutes and rules of the court, and his acts in nowise subjected him to personal liability. (Rule 180 of the old Court of Chancery; Laws of 1847, chap. 280, § 71; Laws of 1848, chap. 277; Supreme Court Rule 83 of 1849; Rule 79 of 1852; Rule 81 of 1858; Rule 82 of 1871; Rule 82 of 1874; 2 R. S. 328, § 70.) The petition of Mary C. Timpson was properly dismissed, as to George W. Lane, because he was neither a party to the action, an officer of the court, or otherwise subject to its order. (Judiciary Act of 1847, § 1; Laws of 1848, chap. 277, §§ 1, 4; 1 R. S. [6th ed.] 896, § 160; *People, etc.,* v. *Commissioners of Highways,* 11 How. Pr. 89; *People, etc.,* v. *Commissioners of Excise, etc.,* 7 Abb. Pr. 34; *Colonial Life Ins. Co.* v. *Board of Supervisors of N. Y.,* 4 id. 84; *People, etc.,* v. *Board of Supervisors of San Francisco,* 28 Cal. 429; Tapping on Mandamus, 17; *People* v. *Supervisors of Greene Co.,* 12 Barb. 217; *People* v. *Supervisors of Westchester Co.,* 15 id. 607; High on Extraordinary Legal Remedies, 35; *People* v. *Monroe,* 20 Wend. 108; *State* v. *Waterman,* 5 Nev. 323; *People* v. *Olds,* 3 Cal. 167; *Napier* v. *Poe,* 12 Ga. 170; *Trustees* v. *State,* 11 Ind. 205; *People* v. *Thompson,* 25 Barb. 73; *People* v. *Corporation, etc.,* 1 Wend. 318; *Wilkinson* v. *Providence Bank,* 3 R. I. 22.)

FINCH, J. In this action, which was brought for the partition of real estate, a sale was had pursuant to the judgment rendered, and the share of the proceeds belonging to Mary C. Timpson and others, amounting in the aggregate to $13,475.23, was brought into court by reason of their infancy and paid over to George W. Lane, as chamberlain of the city of New York, in trust for the infants. No order of the court directing its investment appears to have been made in the action. The money was paid to the chamberlain, on December 15, 1873, and was immediately deposited by him to the credit of his account in the Fulton Bank. It apparently remained there on deposit for a few days when it was invested in a manner

evidently common in the chamberlain's office, but which is criticised by the parties interested in the fund. The chamberlain held a mortgage, made by one Edward Jones, in 1867, which covered certain vacant lots in the city of New York, and having been originally given for $15,000, had been reduced to $10,000, and a portion of the lots released. On the 19th of March, 1874, the chamberlain was ordered to pay over certain moneys, in the suit of *Robins* v. *Robins*, to the persons entitled, and desiring to keep this Jones mortgage, and certain others in which those moneys had been invested, he used the moneys deposited in this case to make the payments required, crediting the suit now before us with an equivalent interest in the Jones mortgage, and practically transferring to himself, in trust, for the infants in this case, an interest in such mortgage, to the amount of $4,101.25. The balance of the fund was thereupon deposited in the trust company where it remained until the following May, when it was invested in a similar manner, and by the same process, in certain other mortgages held by the chamberlain. At the time of this investment in the Jones mortgage, taxes upon the mortgaged property to the amount of something over $700 were in arrears, but the fact was unknown to the chamberlain, and when afterward discovered the amount necessary to pay them was called for and they were paid in full. There is no reason to doubt the sufficiency of the Jones mortgage as a security for the sum unpaid upon it at the time of this transaction. The interest was promptly paid, the obligor in the bond was responsible, and in February, 1875, this mortgage, with others, was delivered over by Mr. Lane, at the close of his term of office, to J. Nelson Tappan, the present city chamberlain. While it remained in his hands, a severe depreciation in the values of real estate ensued, and in 1876 an assessment of more than $8,000 was imposed upon the property, with the usual ruinous effect to the parties interested. The mortgagor abandoned the payment of interest and the present chamberlain, acting on his own impression of duty, foreclosed the mortgage, bid the property in for $8,000, and now holds it at the risk and for

the benefit of those whose funds went into the investment. The taxes remain unpaid, and the result is, substantially, a total loss of a fund which the courts took from the infants for the purpose of its safety and preservation. Mary C. Timpson, becoming of age, called for her money, and being unable to obtain it, moved at Special Term for an order requiring the late and the present chamberlain to pay it over to her. That motion was denied, the denial affirmed at the General Term, and an appeal taken to this court.

The right to compel Lane or Tappan to pay this money is founded upon allegations that their treatment of the fund committed to their care was unauthorized by law and in violation of their duty. To establish this it is strenuously argued that in the absence of an explicit order of the court to invest the fund in bond and mortgage they had no right to do so, and should have deposited the money in the authorized trust companies. In cases of partition it is provided (3 R. S. [6th ed.] 504, §§ 78, 82, 84), that where any of the known parties are infants the court may, in its discretion, direct the share of such infant to be paid over to the general guardian, or to be invested in permanent securities at interest, in the name and for the benefit of such infant; that when the security is directed to be taken otherwise than in the name of a known owner it shall be taken in the name of the clerk and his successors in office; and that the investments when made shall be in the public stocks of the State or the United States, or in bond and mortgage upon unincumbered real estate of at least double the amount of the loan in value? Such investment being once made, the security is not to be discharged, transferred or impaired, without the order of the court entered in its minutes.

These provisions evidently contemplate a case where the court, by an order in the action, directs an investment. They perhaps assume that such direction will be given, but do not purport to furnish a rule to control the action of the officer in the absence of a special direction by the court. This difficulty was met and remedied by rule 180 of the Court of Chancery, that where no direction for the investment of funds paid into

court is contained in the decree, and the money is not applied for within six months thereafter, it shall be the duty of the register, assistant register or clerk with whom the same is deposited, and without any special order for that purpose, to cause it to be invested in public stocks or other permanent securities, and a similar duty was imposed as to accumulations of income. Thus both cases were provided for. Where special direction in the suit itself was given, that order furnished the guide. Where such direction was omitted, the chancery rule required the officer to invest according to its terms. That rule has survived the changes of recent legislation, and is still operative. When the Court of Chancery was abolished, and its jurisdiction and duties imposed upon the Supreme Court the Judiciary Act of 1847, which directed the change (Laws of 1847, chap. 280, § 71), and vested the securities brought into the Court of Chancery in the clerk of the Court of Appeals, was careful to preserve the rules of the older tribunal respecting the deposit and investment of such funds, subject only to the rules and regulations that might thereafter be prescribed by the Supreme Court. The act of 1848 (chap. 277) worked no other change than to substitute the county treasurers, and in the city of New York, the chamberlain, in the place of the clerk of the Court of Appeals as custodians of this class of trust funds. It is claimed, however, that the rules of the Supreme Court have abrogated rule 180, and prescribed for the county treasurers a different duty. (Rule 83 of 1849, rule 79 of 1852, rule 81 of 1858, rule 82 of 1871, rule 82 of 1874.) Through all the changes of the rule referred to it steadily did but one thing. It prescribed the place of deposit of moneys that were to be deposited, and did no more than that. It did not forbid investments in stocks, and bonds and mortgages, either directly or by implication. Its entire operation is plainly limited to uninvested funds, while they remain uninvested. We conclude, therefore, that rule 180 is yet in force, and furnishes the standard by which to test the action of the chamberlain, modified only by the rule of the Supreme Court as to the place of deposit. The chamberlain deposited the moneys resulting from the sale in this action in

the Fulton Bank, and kept them there for a brief period. This deposit was a violation of rule 82. But no injury resulted. The violation was harmless. The fund was in no manner lost or diminished by that act. Soon after a portion of the fund was invested in the Jones mortgage, and the balance deposited with the trust company, where it remained till the after investments were made. The manner in which they were made, by massing in one mortgage the moneys of different beneficiaries, is complained of by the appellant. The sole objections pointed out seem to be that by this process there was a transfer of securities in violation of the statutory rule in partition, and an investment in a mortgage subject to prior incumbrances, which is equally forbidden. There was no transfer of the mortgage. It remained all the time vested in the chamberlain. He did not transfer it at all. He only changed one of the beneficiaries for whom it was held. Nor, in making this change, did he subject the moneys invested to any prior lien or incumbrance because the interests of the other beneficiaries were vested in them earlier. Whatever the date of their interests, all stood on an equality, no one having any preference over the other, the mortgage being held for all. We cannot see any legal objection to the practice adopted in the chamberlain's office of aggregating in one mortgage the funds of several beneficiaries. The court which has supervision of these funds has been cognizant of the custom and has never forbidden it. It aids to a prompt investment of funds, and has much of convenience to recommend it. No rule of law forbids it, and we are not prepared to say it should be discontinued.

It was further objected, that when these funds were invested in the Jones mortgage, there were taxes in arrears constituting an incumbrance upon the mortgaged property. That was true, but as soon as their existence was ascertained, the amount necessary for their payment was called for and they were discharged in full.

We discover, therefore, nothing in the conduct of Mr. Lane to justify the order which was sought against him. He invested these funds and had a right to do so. The securities

chosen at the time were ample, and, to all reasonable judgment, prudent and safe investments. The fund thus intact, and represented by good securities, was, at the close of his term of office, handed over to his successor. That ended the responsibility of Lane, and we see no reason to continue or prolong it.

His successor, Mr. Tappan, continued to receive the interest upon these investments until the two misfortunes happened from which has come all the mischief. Real estate largely depreciated in value, and the property covered by the Jones mortgage, while falling in price, was fatally weighted by the added load of a city assessment amounting to some $8,000. The mortgagor became discouraged, and defaulted in his interest. The chamberlain thereupon foreclosed the mortgage, bid in the property, and holds what the depreciation in values and the rapacity of municipal assessments has left of the investment for the benefit of the infants. It is objected that he ought not to have foreclosed this mortgage without the order of the court, and that in doing so he discharged the mortgage in violation of the statute. We do not deem this foreclosure a discharge within the prohibition of the statute. Practically, the security remains the same and still vested in the chamberlain, and changed only in form, and while it would have been wiser to have asked direction of the court, we cannot say that the foreclosure was improper or illegal. The right to hold the mortgage involved both the right and duty of collecting all sums due upon it, and that in turn the right and duty of using the ordinary modes of collection. Indeed, if he had not foreclosed, but allowed the debt to accumulate without an effort to collect, it is not impossible that a just complaint might have drawn with it the consequences of negligence.

We conclude, therefore, that no remedy for the loss exists against either Lane or Tappan. The wrong to the infants is great. Their property has been taken from them by the law in order to protect it from harm, and the protection has ended in a total loss. There is much of shame and disgrace in a system which leaves such a result possible, but the remedy is

not with us. We cannot redress one wrong by committing another.

The conclusion we have reached on the merits renders it unnecessary to consider whether the motion made in this case, or an action against the late chamberlain, was the proper remedy.

The order should be affirmed.

All concur.

Order affirmed.