WAYDELL et al. v. HUTCHINSON et al.

(Supreme Court, Appellate Division, Second Department.   October 20, 1911.)

1. PARTITION (§ 111*)—SALE—INVESTMENT OF PROCEEDS—LIABILITIES.
   The acts of the county treasurer in making investments of the proceeds of a partition sale for the benefit of a life tenant, pursuant to an order directing, as authorized by Code Civ. Proc. § 1583, the investment of the proceeds in permanent securities, after the adoption of Laws 1880, c. 245, repealing the Revised Statutes relating to partition, and specifying the securities in which proceeds may be made, and before the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

enactment of Personal Property Law (Consol. Laws 1909, c. 41) § 21, regulating the subject, are governed by the equitable rule of due care and prudence, and the question whether he exercised reasonable care in loaning the proceeds on real estate mortgages is for the jury.

[Ed. Note.—For other cases, see Partition, Dec. Dig. § 111.*]

**2. PARTITION (§ 111*)—SALE—LIABILITIES—MANAGEMENT OF PROCEEDS.**

Former chancery rule 180, fixing the ratio of value between real property and the amount of mortgages thereon in the investment of funds paid into court on the sale of an infant's estate by special guardian, does not apply to the conduct of the county treasurer of a county in making investments of the proceeds of a partition sale pursuant to order of court directing investment in permanent securities, as authorized by Code Civ. Proc. § 1583; but his acts are governed by the equitable rule of due care and prudence.

[Ed. Note.—For other cases, see Partition, Dec. Dig. § 111.*]

**3. PARTITION (§ 111*)—SALE—LIABILITY—INVESTMENT OF FUNDS.**

The county treasurer of a county invested proceeds of a partition sale in a first mortgage on real estate, pursuant to an order of the court directing investment in permanent securities. His successor in office foreclosed the mortgage, and a deficiency resulted. There was nothing to show that the beneficiaries of the proceeds knew of the sale, or had any opportunity to protect their interests; nor was there any evidence of negligence or illegality on the part of the successor in making the sale under the foreclosure. *Held,* that the test of negligence of the county treasurer in making the investment was the value of the land at the time of the investment, so that a charge fixing the value at the time of the sale in foreclosure as conclusive was erroneous.

[Ed. Note.—For other cases, see Partition, Dec. Dig. § 111.*]

**4. COUNTIES (§ 99*)—OFFICIAL BONDS—LIABILITIES OF SURETIES.**

Under Public Officers Law (Laws 1892, c. 681) § 12, making sureties on an officer's undertaking, given subsequent to his entry on the discharge of his official duties, liable for all his acts during the term prior to the execution of the undertaking, from the time notice to give further bond is served on him, the sureties on the bond of a county treasurer, given under an order of the board of supervisors for a further bond, become liable for the acts of the officer on the delivery of the bond, though it was not accepted until later, and after the acts claimed to create liability.

[Ed. Note.—For other cases, see Counties, Dec. Dig. § 99.*]

Appeal from Trial Term, Kings County.

Action by M. Elizabeth Waydell, individually and as executrix, and others, against Henry E. Hutchinson and others. From a judgment of dismissal of the complaint, and from an order denying a new trial, plaintiffs appeal. Reversed, and new trial granted.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

Joseph T. Brown, Jr. (Daniel D. Sherman, on the brief), for appellants.

George V. Brower, for respondents.

CARR, J. In May, 1894, a final judgment was entered in the Supreme Court in Kings county in an action in partition entitled Waydell v. Waydell. This judgment provided for the distribution of the proceeds of sale made under the interlocutory judgment. It directed the

payment into court of certain moneys to be held for the benefit of a life tenant, and it provided expressly that said moneys should be deposited "with the treasurer of the county of Kings, to be invested in permanent securities at interest"; and it made provision, likewise, for the payment of the income to the life tenant and the distribution of the fund at the ending of the life estate. Pursuant to such direction, the sum of $14,942.96 was turned over to the county treasurer on May 31, 1894. On May 13, 1895, the then county treasurer invested a part of these moneys on a bond and mortgage of one McLaughlin on improved real estate in the county of Kings upon which the mortgage was a first lien, to the extent of the sum of $3,500, the amount invested. Several months thereafter, the then county treasurer went out of office, and the bond and mortgage in question passed over to his successor. In 1902 the chamberlain of the city of New York, who had succeeded to the powers and duties of the treasurer of the county of Kings, brought an action to foreclose the mortgage, and a judgment of foreclosure was entered, and a sale was had under the direction of the sheriff of the county of Kings. The property was struck down for the sum of $1,000, and, the sale being confirmed by the court, a deed was delivered. The net result of the sale, after deducting accrued taxes, fees, and costs, was but $190.35, thus leaving a deficiency in the sum of $3,430.69. The plaintiffs in this action are the only persons interested in the fund, which was paid into court under the partition judgment above mentioned. They seek to charge the defendants as sureties on the official bond of the county treasurer, who made the investment on bond and mortgage, to the extent of the deficiency arising upon the foreclosure sale. Their theory is that the original investment was unauthorized by law, and that the then county treasurer became liable for the money so invested, and that this liability continued until the security so taken was converted back into cash.

In Matter of Foster, 15 Hun, 387, a trustee under a will had invested, without specific authority, funds of the trust estate on promissory notes. He applied for his discharge as trustee, and a successor was appointed, to whom the notes in question were passed over. A loss resulted from a failure to collect the amount of the notes, and the original trustee was held liable for the moneys so invested, on the authority of King v. Talbot, 40 N. Y. 76. It is under the doctrine of these and similar other cases that the plaintiffs assert liability against the defendants. This claim of liability must rest, therefore, upon the contention that the McLaughlin bond and mortgage was an unauthorized investment, or that it was made negligently. The basis upon which the plaintiffs rest their claim that the investment was unauthorized, and also negligently made, is that at the time of the investment the real property covered by the mortgage was not worth double the amount thereof, though it is conceded by the plaintiffs that it was then worth considerably more than the amount of the mortgage; that is, about $4,200. The proofs offered by the defendants tend to show that the real property in question was then worth about $5,500. It becomes necessary to examine the basis of the plaintiffs'

claim that the investment was unauthorized legally, unless the value of the real property was worth double the amount of the bond and mortgage.

[1] As before stated, the judgment which directed the payment of the moneys into court provided for their investment by the county treasurer "in permanent securities at interest." This requirement was in compliance with section 1583 of the Code of Civil Procedure, where it is prescribed as follows:

"Where a portion of the proceeds representing an undivided share or interest is invested for the benefit of a tenant for life, or for years, or of a widow, * * * the court must cause it to be invested in permanent securities, at interest," etc.

This section of the Code of Civil Procedure was but a re-enactment of section 80 (old number 66) of chapter 5 of part 3 of title 3 of the Revised Statutes. Section 84 (old number 70) of the same chapter of the Revised Statutes (3 R. S. [6th Ed.] 594) specified the securities in which investments of the proceeds of partition sales might be made, as follows: Securities of the United States, and of the state of New York, and bonds and mortgages upon improved real estate worth double the amount of the bond. It was declared in Chesterman v. Eyland, 81 N. Y. 398, that the provisions of the Revised Statutes as to the nature of the investments applied only where the court had directed an investment, and that in the absence of such direction rule 180 of the former Court of Chancery still applied. In the case at bar, however, the court made a direction for investment "in permanent securities at interest."

Nowhere in the Code of Civil Procedure is there any specification of what constitutes "permanent securities" in the meaning of that statute. Prior to the enactment of the Code of Procedure, the Revised Statutes contained a complete scheme of statutory regulation of actions in partition. The Code of Procedure not only made no change in the existing scheme, but continued it expressly. Code of Procedure, § 448. The Code of Civil Procedure contained a complete revision of the statutory regulations of actions in partition. In this revision most of the existing provisions of the former statutes were re-enacted. Some, however, were omitted, without express declaration of repeal. By chapter 245 of the Laws of 1880 the provisions of the Revised Statutes relating to actions in partition were repealed expressly. The situation left by this repeal was that there was no longer any statutory provision defining the "permanent securities" referred to in section 1583 of the Code of Civil Procedure. At the time of the re-enactment of this section, bonds and mortgages on unincumbered real property were permissible as investments of funds paid into court in action of partition, as "permanent securities," and doubtless the intention of the Code of Civil Procedure was to continue them as such. After the repealing act of 1880, there existed no statutory regulation as to a required ratio of value between the amount of the bond and mortgage and the value of the real property to be covered by the lien. The result was that the acts of the county treasurers in making such investments were regulated by the general rules of equity governing

the performance of the duties of trustees in investing trust funds. At the present time this matter is regulated largely by section 21 of the personal property law (Consol. Laws 1909, c. 41). The power of trustees as to investments of trust funds on bonds and mortgages is now restricted by the statute just cited to loans on unincumbered real property in this state worth 50 per centum more than the amount of the loan. This provision, however, was not in force in 1895, at the time of the transaction involved in the case at bar, as it was first enacted by chapter 295 of the Laws of 1902.

[2] It is argued, however, by the plaintiffs, that the transaction was governed by the provisions of rule 180 of the former Court of Chancery. Assuming, but not deciding, that rule to have been in force at the time in question (1895), it is apparent that it did not apply to the facts at bar; for, as was said in Chesterman v. Eyland, ut supra, that rule applied only where there was no direction in the judgment as to the investment of the funds paid into court, and, furthermore, the only provision of that rule making any requirement as to a ratio of value between the real property and the amount of the bond and mortgage relates expressly to moneys brought into court upon the sale of an infant's estate by a special guardian. It appears, therefore, that there was no absolute rule governing the act of the county treasurer in making this investment, which required the value of the real property covered by the mortgage lien to be double the amount of the loan. His conduct in making this loan is to be measured by the equitable rule of due care and prudence, and is a question of fact to be determined by the jury, and not a question of law. The evidence before the jury on the part of the plaintiffs was that the real property was worth $4,200 at the time of the investment of $3,500 on the bond and mortgage. The evidence of the defendants was that the real property was fairly worth $5,500 at that time. The case was submitted to the jury on the proper theory, that liability could be imposed upon the defendant sureties if the act of the county treasurer was negligent. The jury found against the plaintiffs upon evidence which would justify their verdict upon this question, and, were there no other question in the case, there would appear no reason why this court should disturb the judgment entered upon the verdict in favor of the defendants.

[3] As above stated, when this bond and mortgage was foreclosed in 1902, the property was struck down to an outside purchaser for the sum of $1,000. There is no proof that the plaintiffs knew of the sale, or had any opportunity of protecting their equitable interest in the land. There was, of course, no duty incumbent upon these defendants or their principal with regard to this foreclosure sale, as the action in foreclosure was conducted by the ultimate successor of the county treasurer who made the investment. There was no claim of negligence or illegality on the part of any person, except in the original act of investment; hence the question of liability of the defendants was to be determined exclusively by the circumstances then existing. The learned trial court charged the jury as follows:

"I charge you that if you are convinced that, notwithstanding the sale at public auction after advertisement by the sheriff of the county, this property was at that time worth money enough to cover the incumbrances that were on it, together with this mortgage, that these defendants cannot be liable in this case."

To this part of the charge the plaintiffs excepted. It is not clear what was in the mind of the learned court when it thus instructed the jury. It appears that the charges against the property when it was sold was as follows: Bond and mortgage and accrued interest, $3,621.-04; taxes and assessments, $474.14; sheriff's fees, etc., $78.25; costs and allowances, $257.26—making in all the sum of $4,430.69. If the learned trial court intended to include the costs and sheriff's fees as "incumbrances," then its charge was equivalent to a direction that, if the property was worth at the time of the sale $4,430.69, there could be no recovery against the defendants as a matter of law. If the sheriff's fees and costs and allowances were not intended to be included as "incumbrances," then, including the taxes as such, the value thus put before the jury would be the sum of $4,095.18, which, if found by the jury, would as a matter of law exonerate the defendants from liability. On either theory as to the meaning which the court intended when it used the word "incumbrances" in this part of its charge, the instruction was erroneous. The test of negligence in the making of the investment was the value of the land at the time of the original investment, under the circumstances of this case, and the introduction of a test as to its value at the time of the sale in foreclosure, as being conclusive as a matter of law against the plaintiffs, was improper and necessarily confusing to the jury.

[4] The defendants and respondents contend, however, that in any event the judgment in their favor should be affirmed, because, as they contend, they were entitled to a direction of a verdict in their favor. The bond of the county treasurer upon which the defendants were sureties is dated February 26, 1895. The investment on bond and mortgage by the then county treasurer was made on May 13, 1895. The defendants gave proofs tending to show that, notwithstanding the date of the official undertaking, it was not delivered to the board of supervisors until May 24, 1895, and not approved and accepted by that body until June 17, 1895. Hence, as they claim, the official bond in question was not in force as against them at the time the plaintiffs' cause of action arose, if one did arise. It appears by the defendants' proofs that the board of supervisors of Kings county adopted a resolution on February 4, 1895, requiring the county treasurer to file a further undertaking in the sum of $100,000. The bond in question here was filed pursuant to that resolution. Assuming that it was not delivered and accepted until the time claimed by the defendants, yet, when it was delivered and accepted, the sureties upon it became liable for the acts of the county treasurer in the interval between the time the bond was required and that when it was delivered; for it was provided by section 12 of the public officers law (chapter 681, Laws 1892) as follows:

"If a public officer, required to give an official undertaking, enters upon the discharge of any of his official duties before giving such undertaking, the

sureties upon his' undertaking subsequently given for or during his official term shall be liable for all his acts and defaults done or suffered and for all moneys and property received during such term prior to the execution of such undertaking, or if a new undertaking is given, from the time notice to give such .new undertaking is served upon him."

Under the defendants' 'own proofs on this point it appears that, while the undertaking in question was a further or "new undertaking," notice to give such undertaking had been served upon the county treasurer long before May 13, 1895, and that in fact he was endeavoring to comply with such requirement as early as February 18, 1895. Hence the learned trial court did ·not err in refusing to direct a verdict in favor of the defendants, assuming they were entitled to all they claim as to the time of delivery of the undertaking.

However, for the reasons heretofore given, the judgment and order denying the motion for a new trial must be reversed, and a new trial granted; costs to abide the event. All concur.