NELLO NEPOLA, Plaintiff, *v.* THE CITY OF NEW YORK, Defendant.

First Department, December 27, 1935.

*Charles Winkelman* of counsel [*Morris H. Epstein* with him on the brief; *Charles Winkelman*, attorney], for the plaintiff.

*Robert C. Rand* of counsel [*Paxton Blair, Seymour B. Quel* and *William S. Gaud, Jr.*, with him on the brief; *Paul Windels, Corporation Counsel*, attorney], for the defendant.

MERRELL, J. Supported by the affidavit of the plaintiff that a real controversy has arisen between the parties, which the parties have agreed to submit to the Appellate Division of the Supreme Court, State of New York, First Department, for decision, and that the submission thereof is made in good faith for the purpose of determining the rights of the parties hereto, the parties have stipulated as follows: That heretofore and on May 7, 1930, the plaintiff, Nello Nepola, was an infant under twenty-one years of age, and that on that date, pursuant to an order of the Supreme Court of the State of New York, a copy of which is annexed to the agreed statement of facts marked Exhibit A, the sum of $22,000 was deposited with the chamberlain of the city of New York to the credit of said infant, Nello Nepola; that thereafter and on May 27, 1930, pursuant to said order, the chamberlain of the city of New York purchased certificate L. F. M. Series 218, of the State Title and Mortgage Company, in the sum of $21,800; that said purchase, when made, was a legal investment for trust funds; that

the said certificate represented an undivided share in a bond in the sum of $110,000 of a certain Cross Island Heights Home Corporation, and a first mortgage securing the same on certain premises located in Queens county, N. Y.; that under said mortgage certificate, interest was to be paid on June first and December first, respectively, of each and every year; that the said mortgage did not become due until December 1, 1934; that the said date when the said mortgage certificate became due was subsequent to the date when the said infant, Nello Nepola, attained his majority. It is further stipulated that the owner of the said mortgaged premises failed to pay taxes and water charges thereon to the city of New York for the year 1931 in the sum of $4,766.50; for the year 1932 in the sum of $4,849; for the year 1933 in the sum of $3,940; and for the year 1934 in the sum of $4,056.75; that the said unpaid taxes and water charges became and constituted and still constitute a first lien against the said property and impair, to the extent of their total, plus interest and penalties, the security behind the bond aforementioned. The parties further stipulate that the city chamberlain of the city of New York continued to hold the said mortgage certificate on behalf of the infant, Nello Nepola, from the date of its purchase by him to the date of delivery of the same to plaintiff; that the State Title and Mortgage Company, the guarantor on the said certificate, was organized in 1927; that no interest has been paid on the certificate purchased in behalf of plaintiff since December 1, 1933; that on August 2, 1933, the State Title and Mortgage Company, the guarantor on the plaintiff's certificate, was taken over by the State Superintendent of Insurance of the State of New York for rehabilitation, pursuant to an order of the Supreme Court, and that on February 25, 1934, the said State Title and Mortgage Company was taken over by the State Superintendent of Insurance for the purposes of liquidation. The parties further stipulate that on April 8, 1933, plaintiff herein attained his majority, and that plaintiff made demand upon the city chamberlain, and, pursuant to an order of the court, a copy of which is annexed to the agreed statement of facts and marked Exhibit B, the chamberlain delivered to the plaintiff the certificate in the mortgage above described. It is further stipulated in the agreed statement of facts that at the time of the delivery of the said certificate to the plaintiff by the city chamberlain, and up to the present time, there was and is no market where the said certificate can be disposed of at the face value thereof; that the mortgagor has failed to pay or satisfy the said mortgage; that the guarantor, the State Title and Mortgage Company, did not and is unable to perform

on its guaranty. It was also stipulated by the parties that "there was, on May 7, 1930, and is at the present time, a statute in force and effect entitled ' Chapter 249 of the County Law, enacted as Chapter 186 of the Laws of 1908,' which, as amended in 1927, provides as follows:

"*First.* City's liability for funds deposited with chamberlain. The city of New York and outside thereof, each county of the state shall be responsible for all funds or moneys deposited with the chamberlain and treasurer thereof, respectively, by virtue of a judgment, decree or order of [for] any court of record in this state, and an action to recover any loss to or of such fund may be brought against the city or county, respectively, by any party aggrieved or by the comptroller of the state of New York in a court of competent jurisdiction. No liability shall, in any event, attach to a county treasurer or city chamberlain because of a surrender made by him in good faith in accordance with the direction of any [an] order of such court." *

Upon the aforesaid statement of facts agreed upon by the parties, the question submitted to this court is as follows: Did the plaintiff suffer any loss by reason of the facts set forth, for which loss the defendant, The City of New York, is liable to the plaintiff in damages? It is stipulated that if such question be answered in the affirmative, a referee shall be appointed to hear and report to the court the amount of damage sustained by the plaintiff by reason of the above statement of facts, and that judgment shall be entered in favor of the plaintiff and against the defendant for the amount of damage sustained as determined by the court upon the report of such referee; that if the question be answered in the negative, judgment shall be entered for the defendant, The City of New York.

We are of the opinion that, under the stipulated facts, the plaintiff suffered no loss, by reason of the facts set forth, for which the defendant, The City of New York, is liable to the plaintiff in damages. Under the agreed statement of facts, the plaintiff attained his majority on April 8, 1933. Shortly thereafter and on April 21, 1933, the plaintiff applied for and was granted an order at Special Term of the Supreme Court requiring the chamberlain

---

* The title of this act, which, after omitting the part relating to New York city, was incorporated in section 249 of the County Law, by chapter 16 of the Laws of 1909, is "An Act to make each county responsible for all funds or moneys paid into court therein." The act of 1908 was amended by chapter 185 of the Laws of 1927. The section heading set out is not derived from the statute. The stipulation has substituted " of " and " any " for the words set out in brackets. — [REP.

of the city of New York to turn over to the plaintiff the mortgage certificate in question. With such direction of the court the chamberlain complied. Notwithstanding that the plaintiff accepted the mortgage certificate in question at that time pursuant to the order of the Supreme Court, the plaintiff now, over two years after that event, makes claim against the city because the certificate has depreciated in value. At the time of the purchase of the certificate in question the same was a legal investment for trust funds. Having made such legal investment, pursuant to the order of the court, we hold that the city is not liable for the depreciation in the value of the certificate thus held by the chamberlain. The moneys in question were derived from a recovery of $33,000 obtained by plaintiff as damages for personal injuries. The attorney for the plaintiff, under his retainer in the negligence action, was entitled to one-third of such recovery. The remaining $22,000 was ordered paid to the chamberlain as follows:

" Ordered, that the aforesaid sum of $22,000.00 be invested by the Chamberlain of the City of New York in guaranteed First Mortgage certificates on real estate, bearing not less than five (5%) percent interest per annum."

In strict conformity with such order, the chamberlain made the investment required thereby.

We are of the opinion that plaintiff's acceptance of the mortgage certificate in question upon his attaining his majority precludes him from making any claim against the city at this time. Had the plaintiff refused to accept the certificate which the chamberlain held as an investment under order of the court, perhaps a different question might be presented. But here the plaintiff applied for and obtained an order of the court that the certificate in question be turned over to him, and this was done by the chamberlain.

We do not think the plaintiff is in anywise aided by the provisions of section 1 of chapter 186 of the Laws of 1908, as amended by chapter 185 of the Laws of 1927, which provides that the city of New York shall be responsible for all funds or moneys deposited with the chamberlain by order of a court, and that an action to recover any loss to or of such fund may be brought against the city by the party aggrieved. The statute, however, in its final sentence, provides as follows:" No liability shall, in any event, attach to a county treasurer or city chamberlain because of a surrender made by him in good faith in accordance with the direction of an order of such court."

In the case at bar the investment of the plaintiff's funds by the chamberlain was made in strict conformity with the express order of the court, that the money be invested in guaranteed first mortgage

certificates. At that time such investment was concededly a legal investment for trust funds. Nevertheless, it is the contention of the plaintiff that the city is liable, under the terms of the statute, for any depreciation which may have occurred. If the plaintiff is right in such contention, it must follow that the city becomes a guarantor against any and all kinds of loss from investments of the chamberlain, even though made pursuant to an order of the court. If the plaintiff is right in such contention, if the chamberlain should invest money in government bonds at par and the bonds declined in market value at the time they are to be released by the chamberlain, the city must make up the difference. If the bonds in which the investment is made should appreciate in value, then such appreciation would inure to the benefit of the person whose money was invested. If such were the rule, the result would impose upon the city a burden which it could not support. Against such a burden the city would be powerless to protect itself. The city requires the chamberlain to be bonded to protect itself against theft, misappropriation or misfeasance. Surely, no bonding company would write a bond covering any possible depreciation of *any* security which the chamberlain might acquire. Under such circumstances it is improbable that any court would require the chamberlain to make any investments, thereby imposing upon the city a liability in an undetermined amount. We think it is apparent that the intention of the Legislature was to impose no greater liability upon the city than would accrue to the chamberlain for any handling of the moneys. Where funds have been invested by the chamberlain pursuant to an order of the court, the responsibility of the city chamberlain is that of a trustee. (*Chesterman* v. *Eyland,* 81 N. Y. 398; *County of Tompkins* v. *Ingersoll,* 81 App. Div. 344; affd., on opinion below, 177 N. Y. 543.) The true test of the chamberlain's liability is whether he has exercised due care and prudence. In obeying the direction of the Supreme Court, the chamberlain, in the case at bar, cannot be said to have acted imprudently. In *Chesterman* v. *Eyland* (*supra*) there had been an investment of funds of an infant by the chamberlain of the city of New York in a first mortgage, pursuant to the rules of the Court of Chancery and the Supreme Court then in effect. Subsequently a default occurred in the mortgage, which resulted in substantially a total loss of the funds invested. On attaining her majority, the infant applied for an order directing the chamberlain and his successor to turn over to her the amount originally deposited to her credit. This application was denied at Special Term, and the denial affirmed by both the General Term (17 Hun, 520) and the Court of Appeals. In the Court of Appeals (81 N. Y. 398) Judge FINCH, writing for the court, said (at p. 404):

" We discover, therefore, nothing in the conduct of Mr. Lane to justify the order which was sought against him. He invested these funds and had a right to do so. The securities chosen at the time were ample, and, to all reasonable judgment, prudent and safe investments. The fund thus intact, and represented by good securities, was, at the close of his term of office, handed over to his successor. That ended the responsibility of Lane, and we see no reason to continue or prolong it.

" His successor, Mr. Tappan, continued to receive the interest upon these investments until the two misfortunes happened from which has come all the mischief. * * *

" We conclude, therefore, that no remedy for the loss exists against either Lane or Tappan."

While in the case of *Chesterman* v. *Eyland* the question presented involved the responsibility of a chamberlain for the legal acts of his predecessor, the rule there established by the Court of Appeals should, we think, be applicable to the city.

We are, therefore, of the opinion that the question submitted by the parties should be answered in the negative, and that judgment herein should be entered for the defendant, with costs.

McAVOY, O'MALLEY, TOWNLEY and UNTERMYER, JJ., concur.

Judgment directed for defendant, with costs. Settle order on notice.