In the Matter of the Estate of THOMAS F. JEREMIAH, Deceased.

Surrogate's Court, New York County; May 19, 1943.

*James T. Van Steenbergh* for Huntington Page, as executor of Louise F. Runk, deceased, as sole surviving trustee, petitioner.

*John M. Bovey* for George M. Simonson and others, respondents.

*Bernard Cowen* for Francis A. Jeremiah and others, respondents.

DELEHANTY, S.   In this accounting proceeding the objections interposed require a construction of the will of deceased.   The will is dated May 8, 1883.   Deceased died in 1888.   In the paragraph of the will designated " Thirdly " deceased directed his trustees to invest the proceeds of a particular policy of insurance " in the public debt of the United States of America, or of the State of New York, or of the City of New York, or of the City of Brooklyn, or on bonds secured by mortgages on improved and unencumbered real property in the City of New York, or in the City of Brooklyn; the amount to be loaned on any such real property not to exceed two thirds of its cash value at the time of the loan; or in first mortgage registered bonds of the New York Central and Hudson River Railroad Company, or in the like bonds of the Chicago, Rock Island & Pacific Railroad Company, or in the like bonds or stock of the New York & Harlem Railroad Company;   *   *   *."   By appropriate text in later provisions of his will he made the rule of paragraph " Thirdly " of the will the rule for investment of all other property which he directed to be continued in trust.

At the date of the will there existed a city of Brooklyn and a City of New York.   The area comprised within those cities is now a part of the existing city of New York.   Included in the existing city is the county of Queens.   In 1883 this territory was not a part of either of the cities mentioned in the will.

The executor of the now deceased trustee reports as part of the trustee's investments three mortgages to which objections have been interposed.   One of such mortgages is on premises in Tuckahoe, Westchester County, New York.   No serious effort is made to justify this investment under the quoted terms of the will.   Another mortgage reported covers premises at Hollis, Queens County, New York.   A third mortgage covers property at Flushing, Queens County, New York.   In respect of these two mortgages the estate of the deceased trustee urges that at the dates of purchase (respectively 1937 and 1938) the properties upon which mortgages are liens were contained within the limits of the city of New York as it then existed and hence that each investment was authorized by the will.

The will must be construed against the background of the facts known to the testator.   To him the descriptive terms " City of New York " and " City of Brooklyn " meant clearly defined areas under then existing civic controls.   His will did not attempt to deal with the future nor did it leave room for speculation as to future changes in public or legislative viewpoints as to what territory should constitute a unit of city government.

Queens County was existent when the will was written. New York City at the time the will was written was coterminous with New York County which then included most of the territory now comprised within the limits of Bronx County. The area within which investments were permitted by the text chosen by deceased in 1883 had located within it business properties of enormous aggregate value and also thousands of homes for the citizens of two large cities. Each of the cities was a civic unit of known stability. Property values therein were as stable as any within the mortgage-investment field. Deceased gave to his trustees an adequate field of choice in the selection of mortgage investments within the area delimited by him. His language permits of no construction which would validate any one of the three investments under consideration. There is no suggestion that no trust investments of the sort defined by the will were procurable. No such suggestion would be tenable since the authority to make investments in the public debt of the nation and the State would make such argument impossible.

Further objection is made to an investment by the now deceased trustee in a participation in a mortgage on premises located in the area comprised in the city of New York as it existed in 1883. This participation apparently was purchased from Title Guarantee & Trust Company and was accompanied by a guarantee of Bond and Mortgage Guarantee Company. It represents a small fraction of the total loan on the premises. The objectants deny that such an investment is within the powers granted to the trustees by the will. The purchase was made on April 1, 1927, after legislation had been operative for many years which permitted trustees generally to invest in such participations. The question presented is whether or not the fact that trustees generally authorized to invest in " legals " might invest in such participations suffices as an answer to the assertion of objectants that the will of deceased restricts the investment powers of the trustees and prohibits such an investment.

Participations in mortgages and the sales of shares or parts therein as that type of investment came to be known after 1918 were wholly unknown to the investment world in 1883. The practice which developed after 1918 of the purchase by trustees of a mere share or part in a mortgage in respect of which neither the trustee nor the trust estate had any control was foreign to the standard of trust investments existent in the day when the deceased drew his will. These old standards had not changed when deceased died. There existed then only the very limited right of a trustee to parcel out among various beneficiaries shares or interests in a whole mortgage which the trustee had

wholly in his control. (*Matter of Union Trust Company* [*Hoffman*], 219 N. Y. 514; *Barry* v. *Lambert,* 98 N. Y. 300; *Chesterman* v. *Eyland,* 81 N. Y. 398.) The procedure authorized by the practice extant in 1883 was not the equivalent of the purchase of mortgage participations such as were sold so widely to trustees and to the public during the 1920's. The conservative practice of the 1880's required a trustee to own and control the whole mortgage and to have complete power over its management. If he had such ownership and in addition had trust funds of various trusts in his management he could share the mortgage among the funds. In deceased's day a trustee could not buy a participating interest in a mortgage held in the control of another. He had to have the sole control of the security. Deceased's grant of authority to his trustees was to make loans " on bonds secured by mortgages ". In the year 1883 that text meant that the loan was to be secured by a bond held by the trustees and secured by mortgages on land of the restricted character otherwise specified in the will. That language did not authorize the purchase of a mere certificate that someone else held such a bond secured by such a mortgage. Accordingly the court construes the will as not authorizing the investment made in the mortgage participation in issue.

The objections also raise issue respecting the handling by the now deceased trustee of the trust interest in the premises referred to as the West 4th Street property. The facts have been stipulated. Looking at these facts in retrospect it is possible to see that a different course of action might have produced better results. Looking at them however as the trustee had to do the court finds that the facts currently presented questions of business judgment which the deceased trustee honestly solved. The court finds no basis for surcharge in respect of the handling of this property and so overrules the objections relating to it.

Issue is raised also by one group of objectants to the retention by the now deceased trustee of some shares of common stock of New York and Harlem Railway Company. The provisions of the will are held by the court to justify the retention of these shares and so the objections to such retention are overruled.

One group of objectants raises issue as to the amount of legal fees sought by the attorneys for the deceased trustee. The court finds that the amount sought is reasonable and overrules the objection. Counsel have stated that they will not seek to tax costs.

Some questions as to the base for commissions are raised by the objections. The court understands that largely, if not

wholly, the relief sought by these objections has been assented to by the accounting party. Any such open issue not disposed of by agreement will be ruled upon when the decree is presented for settlement.

The trust having terminated, some procedure for distribution of the trust fund must be worked out. If the parties cannot agree upon a formula the court suggests that prior to the preparation of a proposed decree counsel come in for conference with the court which will hear any suggestions as to distribution which any party desires to make. The holding by the court that certain investments of the deceased trustee were not warranted imposes on the estate of the deceased trustee the obligation to make good the capital sums invested in such securities. When such restitution has been made the particular investments may be taken over by the trustee's estate. After plans for distribution have been effected a decree may be submitted, on notice, construing the will and settling the account in accordance with this decision.