## In re STARK'S ESTATE.

### In re CHASE.

#### (Surrogate's Court, Rensselaer County. July 20, 1891.)

INVESTMENT OF TRUST FUNDS—LIABILITY OF TRUSTEE.

A person who was executor, trustee, and legatee under a will which bequeathed a certain sum in trust to be invested and reinvested in bonds secured by mortgage, instead of taking money, assigned to himself as part of the trust fund a bond, secured by mortgage, belonging to the estate. It was for $4,400, and on it there had already accrued $88 interest for the current year, besides $200 unpaid interest for the previous year. The farm on which the mortgage was given was at the most not worth over $6,000 or $7,000, and was, and had been for several years, depreciating in value. Foreclosure proceedings were not commenced till six years thereafter, though interest was never paid, and amounted at the time of sale to $814. Moreover, during these six years the property was continually decreasing in value. At the time the trustee had the mortgage assigned to him he had another assigned to him on his individual account as legatee. On this there never was any arrear of interest. *Held*, that the trustee was liable to the trust fund for the loss by reason of the investment, as the purchase of the mortgage was not a proper investment, and there was not a reasonable degree of diligence in looking after it to prevent a loss after it had been made.

Application by Emily Chase, as a person interested in the trust fund in the hands of the testamentary trustee, for an order under sections 2807, 2808, and 2809 of the Code of Civil Procedure, requiring the trustee to show cause why he should not render and settle his accounts. Upon the return of the order to show cause the trustee appeared and filed his account, to which objections were filed by the petitioner, and thereupon testimony was taken in regard to the several matters at issue. An account was filed March 4, 1890. Subsequently, and on the application of the testamentary trustee, an additional account was filed June 1, 1891. It is conceded that there has been a large shrinkage in the trust fund, amounting of the principal to $1,200 and over, and the claim is made also that there is a large amount of interest for which the trustee has not charged himself in his account. The loss being conceded, the question is, who should bear the loss, the trustee or the trust fund? which involves the further question whether the loss was with or without the fault of the testamentary trustee. The facts will appear in the opinion.

*B. E. Center* and *William Lord*, for petitioner, Emily Chase, guardian of Charles J. Stark, an infant. *John H. Peck*, for trustee, Silas D. Stark.

LANSING, S. Charles J. Stark resided in the town of Schaghticoke, in this county, died early in 1881, and on the 20th day of June of that year his will was admitted to probate. By his will he gave to his son Silas D. Stark and his son-in-law, Edmund P. Chase, the sum of $6,000 in trust, to invest and reinvest the same upon bond or bonds secured by mortgage or mortgages upon real property, and apply the income and profits thereof for the use and support of his daughter, Helen Stark, for and during her natural life, and after her decease, if she shall leave issue her surviving, then to her issue. If more than one child, then in equal proportions. If no child survived her, then the fund was to be paid to the children of the testator in equal proportions. It further appeared that Silas D. Stark, who was the executor, was given a legacy in said will of $5,000, and was also one of the residuary legatees. On the 30th of July, 1883, Silas D. Stark, as executor of said will, settled his accounts in the surrogate's court, and a decree was entered on the same day, which provides as follows: "That out of the moneys of said estate remaining in his hands he retain and pay to himself the sum of $5,000 in

mortgages secured by real estate or promissory notes or their equivalent; that he retain and pay to himself and said Edmund P. Chase, or either who will accept the trust, the sum of $6,000 of a trust fund, to be invested and reinvested, as often as may be necessary, in bond or bonds secured by mortgage on real estate, and apply the income, interest, and profits to the support and maintenance of said Helen Stark for and during the period of her natural life," etc., as provided in said will. It appears from the inventory that among the assets of the estate were a number of mortgages, among them the "File mortgage of $2,900, Regan mortgage of $600, Cipperly mortgage of $3,500, Dodds mortgage of $4,400, Wing mortgage, $800." On or about the 30th of July, 1883, said Silas D. Stark, as executor, assigned to himself for the purpose of opening the trust account with his sister Helen Stark the following securities: Dodds mortgage, $4,688; Wing mortgage, $816; Barry note, $114; and cash, $382; total, $6,000. It appears that on the Dodds mortgage there was $4,400 of principal due; that the balance of $288 was interest, $88 being the accumulation from the 1st of April, when interest was due, up to the 30th of July, (four months,) and the balance of $200 being interest in arrear from the previous years; that the $16 upon the Wing mortgage, which was counted as principal in this investment, was the interest due since the 1st of April, 1883. The Barry note was $100 of principal and $14 of accrued interest; and it may be stated here that there was no interest paid upon the same for five years thereafter until 1888, when the note was paid to the trustee, with interest upon interest in arrears.

It appears that at the same time this trust fund was made up said Silas D. Stark took an assignment to himself, in satisfaction of his legacy of $5,000, of the Cipperly mortgage and the File mortgage; that these mortgages were and are of undoubted security, and the interest upon them has always been paid promptly, and the said Stark holds them to this day. Helen Stark, the beneficiary, is of full age, and it was assumed at the hearing in this proceeding before me that she was a person of unsound mind, and incompetent for the government of herself or property, although she had not been adjudged a lunatic. She was in court, and I had occasion, at the request of the parties, to inquire into her knowledge of affairs, and her capacity to transact business, and I found that the admission was fully warranted by the facts. She had an illegitimate child a year or two prior to the institution of these proceedings, who is the Charles J. Stark named as the petitioner herein. It appears that the Dodds mortgage was upon a farm of about 100 acres, situated in the town of Brunswick, about 6 miles from the city of Troy. Mr. Dodds appears not to have been a successful farmer, and was for some time before the filing of the petition a person of intemperate habits; how long does not distinctly appear. He had suffered the farm to become dilapidated, and the interest upon his mortgage had got in arrear, and there was, as stated above, at the time of the assignment of the mortgage to the trustee (July 30, 1883) an arrearage of $200 in the interest for the year 1882. On 1st April, 1884, there was due of interest, accrued and current, $464, ($288, and $176 for the balance of the year,) upon which the mortgagor only paid the sum of $155. The interest upon the principal alone was $264. The year following, April 1, 1885, he paid $274; April, 1886, $133; April 1, 1887, $146; April 1, 1888, $200; June 3, 1889, $200. The interest for the whole period upon said mortgage from 1883 up to the time of the filing of the first account — March 1, 1890 — was $1,740; the amount paid was $1,108; leaving a balance of $632. It thus appears that the original arrear of interest of $288 was never paid, nor any interest upon that sum, which constituted a part of the principal of the trust fund, and that an arrearage of interest was suffered to accumulate until there was on the 1st of April, 1889, $633 due. In the fall of 1889 said trustee commenced an action for the foreclosure of said mortgage, and judgment was entered therein upon which the same was sold by order of the court. The judgment was for

$5,214.01, besides $231 costs of foreclosure. Thus it appears that at the time of the sale there was $814 of interest due upon said mortgage, there having been added to the principal of $4,400 something like $1,041. The property sold at the sale for $3,700, and was bought by the trustee, as he claims, for the purposes of the fund, he being the only bidder thereat. By a supplemental account filed June 1, 1891, it appears that the trustee has entered upon the management of the farm, and he has paid an arrearage of ground-rent of $150.55; also state, county, and school tax to the amount of $80; and that he has made certain disbursements for repairs upon the farm, and purchased seed, and has received certain small amounts as his share of the income of the farm arising from the letting of the same from the 1st of June, 1890. The only witnesses who testified upon this accounting were the trustee, Silas D. Stark, and witnesses called by him for the purpose of proving the value of the farm and the depreciation of farm lands prior and subsequent to 1883, the time of the investment.

The principal question in this case is as to the propriety of the investment of Silas D. Stark of the trust funds in the Dodds mortgage; in that connection, also, whether the trustee exercised a reasonable degree of diligence in looking after the security after the investment had been made. The rule of responsibility of trustees is that trustees are bound to exercise the same degree of diligence and prudence in the care and management of the trust-estate as in general prudent men of discretion and intelligence in such matters employ in their own like affairs. *King* v. *Talbot*, 40 N. Y. 76, 85. It is not by a prudent investment alone that a trustee performs his whole duty in regard to a trust fund. He is still bound to be watchful, keep himself informed as to whether or not a depreciation in the value of the security is taking place from any cause, to see that the interest is paid with a reasonable degree of promptness, to keep himself informed as to the pecuniary responsibility of the obligor, and in fine to keep himself informed and take notice of all those things affecting the investment which a man of fair judgment, care, and prudence would take and keep in consideration in the matter of a loan of his own moneys; and likewise to take all lawful prudent means with a fair degree of promptness to recover the debt, and prevent a loss coming to the estate. *In re Butler's Estate,* 9 N. Y. Supp. 641. I am of the opinion that the purchase of the mortgage by the trustee was an improper investment of the trust fund; also that there was a lack of that care and watchfulness required of a trustee under the circumstances in looking after the investment after it had been made, and in taking all prudent means to prevent a loss to the estate; and that the trustee should be charged with the Dodds mortgage investment— $4,688—at 5 per cent., less the amount received by him and credited in his account. The reasons for these conclusions may be briefly stated as follows: The value of the farm in 1883, as fixed by the only witnesses whose testimony is entitled to any credit, either for their knowledge of the subject or the credibility of their statement, is placed at between $6,000 and $7,000. All concede that the land was then (1883) depreciating in value year by year, and had been for several years prior to that time. These witnesses, it must be remembered, are the witnesses called by the trustee, and were his friends and neighbors for the most part,— one of them being a relative. Several of them live very remote from the farm, and had no knowledge upon the subject. It was the privilege of the trustee to call persons from the immediate vicinity of the farm, whose knowledge would have entitled their opinion to much greater weight, if he desired to emphasize that portion of the testimony pertaining to the value of the farm at the time of the investment. I am satisfied that the fair value of the farm at the time of the investment was not to exceed $5,000, —$6,000 at the outside; and, even at that time, that a forced sale would not have realized the amount of the mortgage, with its arrears of interest and necessary costs, (which would have equaled $5,000,) had it been sold during that

year. At any rate, the margin, assuming it to be worth $6,000 or $7,000, was far too narrow, considering the question of value alone, where property is depreciating in value, to make it a safe and proper investment of the fund. To this must be added the fact, in considering the propriety of the investment, that the interest was in arrears $200 for the year 1882,—a fact well known to the trustee, since it was one of the assets of the estate. The trustee testifies that the mortgagor promised to pay interest upon interest, which he never did; thus showing an early intention to maintain an arrearage of interest. That this arrearage was not exceptional is shown by the fact that in the next April—1884—the mortgagor only paid the sum of $155, and so continued, with one exception only, in paying much less than the current interest, without any attempt to pay arrears or prevent additional ones.

But if it be assumed that this investment, as originally made, could be justified under any construction of the law applicable to the facts in this case, the next question which arises is, was the conduct of the trustee subsequent to the making of the investment such as would exonerate him from liability for the loss which it is conceded has occurred in this case? In other words, did he exercise that diligence and care over the investment after it had been made, by inquiring into the depreciation of the property, enforcing the payment of interest, inquiring into the responsibility of the mortgagor, and taking all such lawful means with reasonable promptness to recover the debt and prevent loss to the estate, which a man of fair judgment, reasonable care and prudence, would take under such circumstances in the management of his own investment? It cannot be doubted but that the trustee, knowing when he made the investment that interest was in arrear, and real estate depreciating, was called upon in the discharge of his duty to be watchful, and, if a mistake had been made in making the investment, to see that the estate suffered as little loss as possible through his error of judgment. Five hundred dollars was due each year upon the principal sum, and it seems to me clear that it was the duty of the trustee (upon ascertaining at the beginning of the year 1884 that the mortgagor was unwilling to pay more than $155 interest) to have ascertained whether he was a man of any pecuniary responsibility, so that his bond would furnish any security for the debt; and, whether he was so or not, in any event to have demanded at least the entire interest due; and such portion of the principal then due as would be necessary in order that the amount might be reduced for which the land was security, until the loan was within safe limits. He says he never asked to have the principal sum reduced, contenting himself with asking for interest, and accepting less every year than the amount due during the current year, with one exception; and this with the knowledge that such property was depreciating in value constantly, and that every year this farm, from the method of farming employed, would probably bring less. A failure to take active measures under such circumstances to recover the money was culpable negligence, and it cannot with any propriety be said that he was taking such care of this investment as men in general of discretion and intelligence in such matters employ about their own affairs. In my judgment, the loss has been occasioned by such want of care and diligence on the part of the trustee—*First*, in making the original investment of the fund; and, *second*, in the failure to use such proper care, watchfulness, and oversight, and the adoption of such prompt means to prevent loss to the estate after the investment had been made, as men in general of ordinary intelligence and prudence in such matters exercise in their own affairs; and I should fail in my duty if I suffered the loss to fall upon the fund and its beneficiary, rather than upon the trustee.

There is still another consideration which has had great weight in determining the conclusion which I have reached in this matter, and that is this: Ample means were placed at the disposal of the trustee with which to set up this trust. It was his duty as trustee to purchase as good securities as he

was able, by the use of reasonable care and discretion and intelligence, for the purposes of the trust. No duty devolved upon him in his character of executor to force an indifferent security upon the trust-estate simply because it belonged to the decedent's estate. Even if he felt a duty as executor to dispose of a doubtful security upon the best possible terms, it was his duty as trustee to resist the purchase for the trust-estate of such a doubtful security. If his two duties appeared to be conflicting, the law required him to decide promptly in favor of the trust-estate; that is to say, that, if any loss was likely to follow from the unmarketable condition of any of the securities of decedent's estate, it should fall upon that estate, and not upon the trust fund.

It may be further stated that the executor had an interest as residuary legatee also, which would likely control his action and impel him to dispose of an indifferent security upon the best possible terms, since the less the depreciation occurring in the securities owned by the estate the larger would be the residuary fund in which he was entitled to share. Besides that, and the more important consideration, it appears that the executor and trustee was also a legatee in the sum of $5,000, and that he selected in payment of his legacy two securities which were then and continued to be of undoubted value and safety, and turned over at the same time the only security which was indifferent or questionable, so far as it appears, to himself as trustee for the benefit of his unfortunate sister. In my judgment the trustee should be held to the same responsibility as though he had gone outside of the estate and purchased the security in the market, and with full knowledge of all the facts, namely, that the interest upon the security was in arrear, that the mortgagor was an untidy farmer, that at most there was a very slender margin between the value of the property and the amount of the investment, either of which circumstances would greatly discredit it. Even his own counsel testified upon the trials that where "interest was going back it wasn't the kind of an investment for a trust fund." And I doubt whether, if the executor, trustee, and legatee had held the office of trustee alone, the security in question would ever have been seriously considered by him as an investment for the trust-estate.

In addition it appears in the supplemental account filed by the trustee that there was an arrearage of ground-rent of $150 on this farm. What the amount of the rent per year was does not appear, and I shall not stop to consider now whether the lease was in effect a prior lien to the mortgage, or whether the mortgage was a lien upon a leasehold estate. It is sufficient to say, if it is the latter, a mortgage upon a leasehold estate is utterly indefensible as an investment. *Butler* v. *Jarvis*, 4 N. Y. Supp. 137. And even if the ownership of the original title by another may be construed to be a prior lien or incumbrance, it does not render the security less objectionable, since it is an incumbrance which endangers the title and security of the mortgagee, and would be likely to result—as it has done in this case—in adding new burdens to the trust fund. In either event, such an investment cannot be commended. I shall not stop to characterize, as I think it deserves, the general make-up and management of the investment of this trust fund, which consists of two mortgages, with accrued interest thereon, which accrued interest constitutes a part of the trust fund, (and upon which it is not claimed that any interest was ever paid;) in part, also, of a note, on which there was two years of accrued interest, upon which note interest even was not paid until five years afterwards; and a balance of money ($382) which was allowed to remain in the executor's safe for a number of years without any attempt of investment, or without even depositing the same in the savings bank, which he was at least temporarily authorized to do. The whole conduct of the estate, in fine, has been characterized by loose, inefficient, and improper management, and I shall hold, for the purpose of this accounting, that the trustee be charged with the sum of $6,000, which constitutes the trust fund, and with interest thereon

from the time it was received by him, to be computed in the following manner: That he be credited with such interest as he has received on account thereof, and that he be then charged with interest for the balance of the time at 5 per cent. Let a decree in accordance herewith be presented.