WILLIAM MILLS, an Infant, by MARTHA MILLS, His Guardian ad Litem, Petitioner, Respondent, *v.* JEANETTE BLUESTEIN, Defendant.

ADOLPH A. BERLE, JR., as Chamberlain of the City of New York, Appellant.

Second Department, March 19, 1937.

*William S. Gaud, Jr.* [*Paul Windels, Corporation Counsel*, and *Paxton Blair* with him on the brief], for the appellant.

*William Plean*, for the respondent.

HAGARTY, J. The question presented by this appeal involves the responsibility of the chamberlain of the city of New York for money belonging to an infant, deposited with him pursuant to an order of the Supreme Court, part of which at least has been lost by reason of the depreciation of the value of the security in which it was invested by the chamberlain.

This proceeding was instituted by a petition, and the appropriateness of the proceeding is not questioned. As to the facts, there is little or no dispute.

Briefly, it appears that on or about the 6th day of February, 1929, there were deposited with the then chamberlain of the city of New York the proceeds of a judgment amounting to the sum of $1,000 obtained on behalf of the petitioner, then an infant. Petitioner arrived at his majority on the 7th day of August, 1935, and now looks to the chamberlain for his money.

The court order, under which this money was deposited, directed the chamberlain " to invest the said money so deposited with him to the credit of said infant plaintiff, in a guaranteed mortgage or guaranteed mortgage certificate or other similar securities, the net income therefrom to be held for the account and benefit of said infant plaintiff."

Of the sum of $991.54 now to the credit of the petitioner on the chamberlain's books there is in cash only $11.54, and the remainder is represented by a guaranteed mortgage certificate which is a participation interest in a mortgage of $72,500, made on the 17th day of July, 1928. This investment was made by the then chamberlain on the 15th day of February, 1929, by accepting a mortgage certificate guaranteed by the State Title and Mortgage Company, the mortgage in question being a lien on premises situated at 43-76 One Hundred and Sixty-third street, Flushing, which is an apartment house. The State Title and Mortgage Company is in process of liquidation. The certificate is worth about one-half of its face value.

The respondent-petitioner claims here that, at the time this investment was made, not only was the property incumbered by tax liens, but the investment did not conform to the standard prescribed by section 111 of the Decedent Estate Law and section 21 of the Personal Property Law, as the property was not worth fifty per cent more than the amount of the mortgage.

As to the first claimed defect in the investment, it is my opinion that the so-called tax liens, in and of themselves, do not justify a finding of liability on the part of the chamberlain. At the time of the investment the taxes for the second half of 1928 were not paid, but they were paid before the end of 1929. An outstanding tax lien, amounting to $614.72, was canceled on the 19th day of July, 1929. The property was concededly worth $94,200, and so I think it might be said that these tax liens, subsequently paid, were insignificant, and would not deter a trustee from investing in the property. (*Crabb* v. *Young*, 92 N. Y. 56, 69; *Chesterman* v. *Eyland*, 81 id. 398, 404.) The case of *Rector, etc., Ch. St. Matthew, etc.*, v. *Title G. & T. Co.* (246 App. Div. 251; affd. without opinion, 272 N. Y. 568), invoked by respondent, is not to the contrary. There, an investor sought rescission because the mortgage had been represented to be a first mortgage, although the defendant was aware, not only that the mortgage was in default, but that taxes for the years 1931 and 1932 had not been paid and were a prior lien at the time of the purchase in September, 1932. It was held that plaintiff was entitled to rescind. The soundness of the investment was not the issue in that case, as I view it, and it is not authority for a holding that delinquent taxes, though trivial in amount, render a mortgage investment unsound.

Liability of the chamberlain, however, predicated upon the statutes, *i. e.*, that the property at the time of the investment was worth only the sum of $94,200, presents a more serious question. That was the appraisal of an impartial expert who had been appointed by the official referee in accordance with a stipulation of the parties. Thus there was not a fifty per cent equity, as comprehended by the statutes cited. Furthermore, it is undisputed that the chamberlain made no independent investigation of the mortgaged property at the time, but relied exclusively upon the face value of the certificate issued and guaranteed by the State Title and Mortgage Company. Inscribed on the face of the certificate is the statement, " At the date hereof, the share in this bond and mortgage constitutes a legal investment for trust funds under the laws of the State of New York."

Despite this statement, the fact remains that, because of the insufficiency of the equity, the investment did not conform to the standard prescribed by the statutes. The question then arises as to whether or not the failure of the trustee to make a so-called legal investment renders him liable for such loss as has occurred, notwithstanding the fact that the investment was made in accordance with the letter of the order of the court.

*Matter of Cady* (211 App. Div. 373, 375) involved losses by a trustee in investments which were not made in conformity with statutory authority and with proper investigation. While the trustee was held liable in that case, it was not on the theory that he was a guarantor. DAVIS, J., for the court, writes: " The duty devolving upon a trustee under such circumstances in making investments for the trust fund is well understood. He may, by statutory authority, without risk to himself, make certain investments. [Authorities cited.] Beyond that, in making investments he is held to the duty to be faithful, diligent and prudent in an administration intrusted to him in confidence in his fidelity, diligence and prudence (*King* v. *Talbot*, 40 N. Y. 76, 84); and while he is not a guarantor of the safety of the securities in his charge belonging to the estate he is bound to exercise such prudence and diligence in the care and management of the estate as men of discretion and intelligence in general employ in their own like affairs. (*McCabe* v. *Fowler*, 84 N. Y. 314.) He must exercise sound discretion, as well as good faith and honest judgment. (*Matter of Hall*, 164 N. Y. 196, 200.) Failing in this duty and acting in contravention of principles which the law charges him to observe, he is guilty of constructive fraud, regardless of his motives or intentions (*Costello* v. *Costello*, 209 N. Y. 252), and becomes liable to the trust fund for the loss by reason of the investment. (*Matter of Stark*, 15 N. Y. Supp. 729.)"

There is authority which tends to the contrary view to the effect that when a trustee makes an investment which is not within the category set forth in the statutes he becomes a guarantor of the loss sustained. In *King* v. *Talbot* (40 N. Y. 76), cited by DAVIS, J., in *Matter of Cady* (*supra*), it was written in the prevailing opinion for the court that the rule or custom then in effect, that a trustee confine investments to the public debt or to loans for which real estate is pledged as security, did not prevent a trustee from investing in other classes of security, provided, of course, he exercised the requisite prudence and diligence. The court as a whole, however. was equally divided, four and four, on the question of whether or not it was a settled principle of law that a trustee must invest in government or real estate securities, and that any other investment would be a breach of duty, making the trustee personally liable for any loss that might result.

In *Villard* v. *Villard* (219 N. Y. 482, 499) Judge CHASE writes: " Our statute provides in detail in what securities an executor, administrator, trustee or other person holding trust funds may invest. (Decedent Estate Law [Cons. Laws, chap. 13], § 111.) If

an executor disregards the provisions of the will or a rule of law relating to investments, he takes the risk of any loss that may result, without the right to any profit that he may make by reason of such investment. (*Holden* v. *N. Y. & Erie Bank,* 72 N. Y. 286; *Adair* v. *Brimmer,* 74 N. Y. 539.)" Whether or not Judge CHASE meant, when he wrote "he takes the risk of any loss that may result," that the trustee was a guarantor, or was simply compelled to accept the burden of justifying the investment, is debatable.

In *Matter of Adriance* (145 Misc. 345, 349) Surrogate WINGATE was of opinion that, in failing to abide by the statutes in making an investment, the trustee in practical effect becomes a guarantor.

The language of the statutes, however, is permissive rather than mandatory. My opinion is that the construction thereof adopted by the Fourth Department in the *Cady Case* (*supra*) should be followed.

While this matter is not an action brought pursuant to section 1 of chapter 186 of the Laws of 1908, as amended by chapter 185 of the Laws of 1927, nor, indeed, is that provision of the law invoked by the respondent, nevertheless its consideration may be helpful. It reads: "The city of New York and outside thereof, each county of the State shall be responsible for all funds or moneys deposited with the chamberlain and treasurer thereof, respectively, by virtue of a judgment, decree or order for [*sic*] any court of record in this State, and an action to recover any loss to or of such fund may be brought against the city or county, respectively, by any party aggrieved or by the Comptroller of the State of New York in a court of competent jurisdiction. No liability shall, in any event, attach to a county treasurer or city chamberlain because of a surrender made by him in good faith in accordance with the direction of an order of such court."

The First Department has held, in *Nepola* v. *City of New York* (246 App. Div. 15), that this provision does not operate to render the chamberlain a guarantor of funds deposited with him. Nevertheless, I am of opinion that the Legislature intended to impose thereby upon the chamberlain the highest degree of care and prudence in investing the funds involuntarily intrusted to his care. As a matter of routine, each year large sums of money of the character involved in this proceeding are paid into the hands of the chamberlain, as a public official, for safekeeping and investment. Those most concerned have no say as to the nature or advisability of the investment. We stated in *Banks* v. *Jacoby & Sons, Inc.* (246 App. Div. 841): "It is evident that the purposes of these statutes are to hold officials and the municipality to strict responsi-

bility for funds, intrusted to their custody, of infants and other wards of the court."

That measure of responsibility, I believe, required the chamberlain to investigate the worth of the underlying security, and did not justify him in resting upon the guaranty and the statement that the participating interest in the mortgage constituted a legal investment for trust funds under the laws of this State. In this case it did not constitute such investment. The order directing the chamberlain to invest the proceeds in a guaranteed mortgage or guaranteed mortgage certificate or other similar securities did not purport to relieve him, and in law could not relieve him, of his statutory responsibility.

The further question is then presented as to whether or not the investment was one which should have been made by a person charged with strict responsibility. In other words, may the loss which was sustained be attributed to the chamberlain's failure to make the inquiry? If such inquiry had in fact been made, would the chamberlain have been justified in investing in a mortgage of $72,500 on property worth $94,200, guaranteed by the State Title and Mortgage Company? Because of the fact that the equity was not in the proportion contemplated by law and not in an amount which is the customary and accepted safeguard, it may fairly be said that the investment should not have been made, and that in making it he failed in the discharge of the duty imposed upon him.

For these reasons, I am of opinion that the order appealed from should be affirmed, with ten dollars costs and disbursements.

LAZANSKY, P. J., DAVIS, ADEL and TAYLOR, JJ., concur.

Order confirming report of official referee and directing the chamberlain of the city of New York to pay over to the respondent the sum of $991.54 in cash, plus accrued interest thereon, less his legal fees and disbursements, affirmed, with ten dollars costs and disbursements.