WILLIAM MILLS, an Infant, by MARTHA MILLS, His Guardian ad Litem, Respondent, *v.* JEANETTE BLUE-STEIN, Defendant, and ADOLPH A. BERLE, JR., as Chamberlain of The City of New York, Appellant.

318

Argued May 18, 1937; decided July 13, 1937.

*Paul Windels*, Corporation Counsel (*William S. Gaud, Jr.*, and *Paxton Blair* of counsel), for appellant. The former Chamberlain was not guilty of a breach of trust in making the investment. (*Nepola* v. *City of New York*, 246 App. Div. 15; *Chesterman* v. *Eyland*, 81 N. Y. 398; *Tompkins County* v. *Ingersoll*, 81 App. Div. 344; 177 N. Y. 543; *Donald* v. *City of New York*, 248 App. Div. 860; *Matter of Adriance*, 145 Misc. Rep. 345; *King* v. *Talbot*, 40 N. Y. 76; *Purdy* v. *Lynch*, 145 N. Y. 462; *Matter of Clark*, 257 N. Y. 132; *Matter of Flint*, 240 App. Div. 217; 266 N. Y. 607.)

*Copal Mintz* and *Hyman Korn* for Charles A. Buckley, *amicus curiæ.* The deposit order did not contemplate any independent investigation, but only an ordinary

purchase, in due course, of a guaranteed mortgage certificate in the same manner as, and with no greater circumspection than, was being exercised by other investors. (*Rector* v. *Title Guarantee & Trust Co.*, 246 App. Div. 251; 272 N. Y. 568; *Matter of Flint*, 240 App. Div. 217.) There is no satisfactory or adequate evidence that the property was worth less than fifty per cent more than the amount of the mortgage. (*Matter of Turner*, 156 Misc. Rep. 68; 246 App. Div. 741; *Waydell* v. *Hutchinson*, 146 App. Div. 448.)

*William Plean* for respondent. Investments of trust funds are expressly limited by statute. (*Nepola* v. *City of New York*, 246 App. Div. 15; *King* v. *Talbot*, 40 N. Y. 76; *McCabe* v. *Fowler*, 84 N. Y. 314; *Costello* v. *Costello*, 209 N. Y. 252; *Matter of Cady Estate*, 211 App. Div. 373; *Gould* v. *Gould*, 126 Misc. Rep. 54; *Matter of Randolph*, 134 N. Y. Supp. 1117; 150 App. Div. 902; *Villard* v. *Villard*, 219 N. Y. 482.) When the investment was made, the premises were incumbered by arrears of taxes and an open tax lien, both of which constituted prior liens on the mortgaged property. Trust funds invested in property incumbered as these were at the time of the investment, did not constitute such investments in bonds and mortgages on unincumbered real property as authorized by statute. (Cons. Laws, ch. 13; Cons. Laws, ch. 41; *Title Guarantee & Trust Co.*, 246 App. Div. 251; 272 N. Y. 568.) Trustees are bound by a strict duty to administer trust funds placed in their care. Delegation of a discretionary power with respect to the handling of the fund constitutes a breach of such trust for which the trustee is liable as a guarantor. (*Matter of Clark*, 257 N. Y. 135; *Matter of Flint*, 240 App. Div. 217; 266 N. Y. 607; *Purdy* v. *Lynch*, 145 N. Y. 462; *Durant* v. *Crowley*, 197 App. Div. 540; 234 N. Y. 581; *O'Connor* v. *Waldo*, 83 Hun, 489; *Merk* v. *Behrens*, 252 Pac. Rep. 91; *Fidelity Deposit Co.* v. *Butler*, 130 Ga. 225.) The duties of a trustee are outlined by strict rules of law.

Mere reliance on the guaranty of an interested party is not only contrary to prudence and established rules of law, but imposes a liability on the trustee to make good any loss sustained by a beneficiary of a trust fund, where such reliance caused the loss, whether directly or indirectly. (*Matter of Adriance*, 145 Misc. Rep. 345; *Matter of Frazer*, 150 Misc. Rep. 43; *Durant* v. *Crowley*, 197 App. Div. 540; 234 N. Y. 581; *Matter of Hurlbut*, 210 App. Div. 456; *Matter of McDowell*, 102 Misc. Rep. 275; *Matter of Turner*, 156 Misc. Rep. 68; *Matter of Grunhut*, 154 Misc. Rep. 475; *Matter of Allen*, 142 Misc. Rep. 113; *Matter of Dalsimer*, 160 Misc. Rep. 906; *Matter of Cummings*, 193 App. Div. 596; *Gilbert* v. *Kalb*, 37 Atl. Rep. 423; *Ingle* v. *Partridge*, 34 Beav. 411.)

LEHMAN, J. In February, 1929, an order was entered in an action to recover damages for personal injuries in the Supreme Court of Kings county, which required the defendant in the action to deposit the sum of $1,000 " with the City Chamberlain of the City of New York to the credit of the infant plaintiff William Mills there to remain on deposit until said infant shall have attained the age of twenty-one years, or until the further order of the Court in the premises, and said City Chamberlain is hereby further authorized and directed to invest the said money so deposited with him to the credit of said infant plaintiff, in a guaranteed mortgage or guaranteed mortgage certificate or other similar securities, the net income therefrom to be held for the account and benefit of said infant plaintiff."

Pursuant to that order the City Chamberlain invested $980 of the amount so deposited in a guaranteed mortgage certificate. The certificate represented an undivided interest in a bond and mortgage for $72,500 on premises in Flushing, New York city. The certificate is issued by the State Title and Mortgage Company, a corporation subject to the supervision of the Insurance Department of the State of New York. The certificate among other

things provides: " The Company guarantees the payment of said principal and interest," and in capital letters states that: "AT THE DATE HEREOF, THE SHARE IN THIS BOND AND MORTGAGE CONSTITUTES A LEGAL INVESTMENT FOR TRUST FUNDS UNDER THE LAWS OF THE STATE OF NEW YORK." A mortgage certificate is in fact a legal investment for trust funds under the laws of the State of New York only where the bond and mortgage is " on unincumbered real property in this state worth fifty per centum more than the amount loaned thereon." (Decedent Estate Law [Cons. Laws, ch. 13], § 111.) The City Chamberlain made no independent investigation to determine whether the mortgaged premises were unencumbered and worth fifty per cent more than the amount loaned. He relied upon the guaranty of the company and its assurance that the certificate constituted a legal investment for trust funds.

In 1935, when the infant plaintiff in the action for damages, to whose credit the moneys had been deposited with the City Chamberlain, attained the age of twenty-one years, demand was made at the City Chamberlain's office for payment of the moneys deposited. The guaranteed mortgage certificate on which the infant's money was invested was past due. The Superintendent of Insurance, under order of the court, is liquidating the business of the guarantor. An offer to deliver the mortgage investment to the plaintiff in the action for damages was refused by the plaintiff. Upon his petition, the City Chamberlain has been directed to pay to the petitioner in cash the money deposited to his credit less the legal fees and disbursements of the Chamberlain.

Moneys paid into court are subject to the direction of the court. " Each court may direct that money paid into that court in any action or proceeding brought therein * * * may, after having been deposited with the county treasurer or city chamberlain, be paid out

transferred, invested or reinvested in any manner or form that appears to it best for the interests of the owners thereof." (Civ. Prac. Act, § 136.) Such directions have, in this case, been embodied in an order of the court as provided in that section. An investment of such money made thereafter, not in accordance with these directions, would be unauthorized and illegal; and the owner of the money would be entitled to disavow the illegal investment and to insist upon payment to him of the moneys paid into court for his benefit. (*Matter of Schmidt* v. *Chamberlain of City of New York*, 266 N. Y. 225.) In the instant case there has been no violation of the letter of the order of the court. The direction of the court to invest in a " guaranteed mortgage or guaranteed mortgage certificate or other similar securities " placed upon the City Chamberlain the duty to invest the money deposited in court with him and confined his choice of investment to the class of securities specified in the order. Some scope for choice within that class was, however, left, even though the choice was thus restricted, and the order does not sanction any dereliction of duty imposed by law in making such choice.

As custodian of the moneys paid into court, the City Chamberlain is, at all times, under a duty to exercise, at least the same care and prudence which a reasonably careful man would exercise in the management of his own affairs. That is the test which must be applied when any act done by him is challenged and he is charged with dereliction of duty. His responsibility. is, it has been said, similar to that of a trustee to whom the custody and investment of trust funds have been confided. (*Chesterman* v. *Eyland*, 81 N. Y. 398; *County of Tompkins* v. *Ingersoll*, 81 App. Div. 344; affd., 172 N. Y. 543.) In this case the petitioner charges that the City Chamberlain acted negligently and wrongfully in accepting without independent examination the assurance of the guarantor that, on February 25, 1929, the date when the investment was made, the bond and mortgage was

a legal investment for trust funds. A search of the title of the mortgaged premises would have disclosed that on that date the second half of the taxes for 1928 were unpaid and that the premises were encumbered by an outstanding tax lien for $614.72. These taxes were paid and the tax lien was canceled before the end of 1929. The value of the premises was, it is not disputed, at least $94,000, and the courts below have held that the temporary incumbrance upon the mortgaged premises was relatively too unimportant to render the investment improper. The courts below have, however, also found that the bond and mortgage was not a legal investment because on that date the mortgaged property was worth only $94,200, which is less than "fifty per centum more than the amount loaned thereon." Based upon that finding the courts below have concluded that the plaintiff is entitled to disavow the investment and to demand payment of the moneys belonging to him.

We assume that the mortgaged property was in fact worth only $94,200 and that a competent appraiser would not have valued it at fifty per centum more than the amount loaned thereon, or $109,000. Even then, the question remains whether the Chamberlain was under any duty to make an independent search of title or an independent appraisal of value. Even a trustee is not to be charged with moneys invested by him in good faith in securities which do not fully meet the standard prescribed by the statute for investment of trust funds where failure to discover the defect is not due to negligence or other fault of the trustee.

It is said that here the custodian in acting upon the assurance of the guarantor exercised no care himself. A trustee or a custodian with duties analogous to a trustee may not delegate to another an exercise of discretion which is part of his own duty; but reliance upon the assurance of the guarantor was not a disregard or delegation of duty by the Chamberlain. The City Chamberlain could hardly be expected to search the title

or appraise the value of every parcel of real estate subject to a mortgage in which court funds are invested. To do so in person would be a physical impossibility and he has no staff of deputies who can do so in his place. All that can be required of him is to make such investigation and to obtain such information as would under the circumstances seem sufficient to a reasonably prudent investor. Since the City Chamberlain could not in person investigate the title or value of the mortgaged premises, action based upon a report or assurance of another is not a delegation of duties or powers. It is indeed the only way in which his powers could be intelligently exercised and reliance upon such assurance or report is not negligence if it comes from a source upon which reliance would be placed by a man of prudence.

The assurance here came from the guarantor. The company was subject to the supervision of the Insurance Department and to all the statutes, rules and regulations intended for the protection of those who relied upon the guaranty or assurance of such a corporation. The company was in good standing. It was permitted by the Department of Insurance to sell guaranteed certificates to investors with the representation that they were legal investment for trust funds. An investor might reasonably assume that such representation was made in good faith and after proper investigation. Indeed, the purpose of the representation was to induce investors to act upon it. Loss caused by error in valuation of the mortgaged premises would fall upon the guarantor under its guaranty.

In 1929, at a time when the solvency and stability of the guarantor was not challenged, the City Chamberlain was not negligent or derelict in duty in relying upon a representation made by the guarantor, with the sanction of the Insurance Department, for the purpose of inducing such reliance by trustees. It cannot be said that prudence then dictated that the representation or assurance should be fortified by a title search and appraisal from another

source.  The moneys of the petitioner were invested in the guaranteed mortgage certificate as authorized by the order of the court and the loss due to the undisclosed defect in the investment and the insolvency of the guarantor must be borne by the petitioner for whose benefit the investment was made.

Since we find that there is no evidence of negligence or wrong by the City Chamberlain who made the investment, we do not consider the question of whether the order appealed from would have been a proper remedy if there had been such wrong.

The orders should be reversed and the application dismissed, without costs.  The question certified should be answered in the negative.

RIPPEY, J. (dissenting).  I cannot agree with the result about to be announced in this case.  As Judge LEHMAN points out, the fact that the order of the court limited the City Chamberlain to an investment in a " guaranteed mortgage or guaranteed mortgage certificate or other similar securities " did not relieve him from liability for " any dereliction of duty imposed by law in making such choice."  In any ordinary case, to comply with the duty imposed on him by law, *the least that he could have done* was to exercise such " care and prudence which a reasonably prudent man would exercise in the management of his own affairs " under the same or similar circumstances. It is hard to conceive of a reasonably prudent man in the management of his own affairs blindly accepting the representation of a seller of securities as to their character and quality without inquiry or investigation of any kind. Much less could a man so act where he is responsible for the investment of other people's money and expect to be relieved from liability for loss in the event that the statement relied upon should prove to be false.

In this case, I think the measure of care required was higher than has been stated.  The circumstance was present that the money invested was that of an infant,

the protection of whose interests has always been the subject of special care and solicitude. The court order as to the kind of investment to be made did not compel the Chamberlain to make the particular investment at all hazards. It was only permissive and could be used as a shield against attack for loss only in the event that the Chamberlain should be satisfied that the permissive investment was proper after he had exercised the care required of him. Concededly, he made no investigation whatever of the character and quality of the investment. Inquiry or investigation might have indicated to one exercising ordinary prudence that securities other than a " guaranteed mortgage certificate " but of a similar character would have indicated greater safety. Inquiry or investigation might have indicated that some other kind of investment would be preferable, and to the end that an investment offering greater safety might be made the court order would doubtless have been modified to meet the Chamberlain's recommendations. The Chamberlain may not have been required to make an independent search or appraisal of the underlying security. He could at least have required the seller to exhibit whatever evidences of title and value he had. Furthermore, the intention of the Legislature " to hold officials and the municipality to strict responsibility for funds, intrusted to their custody, of infants and other wards of the court " is clear. (*Banks* v. *Jacoby & Sons, Inc.,* 246 App. Div. 841.) It has established the rule of strict responsibility (Laws of 1927, ch. 185), and so have the courts. (See opinion below, 250 App. Div. 440, for collection of authorities.)

I know of no rule heretofore established in any jurisdiction which absolves a fiduciary from liability for loss where, as in this case, he makes an investment of funds intrusted to his care without personally exercising the slightest diligence to determine its character, quality and safety.

I think the decision of the lower courts was correct and that the order appealed from should be affirmed, with costs.

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur with LEHMAN, J.; RIPPEY, J., dissents in opinion.

Orders reversed, etc.