Charles A. Loreto, J.
Motion for an order declaring illegal and void the election of directors and officers of the Salnor Corporation held at a meeting on December 22,1958.
The corporation is a New York corporation, formed in 1944. Its only asset is a piece of income-paying realty. Originally *190 its stock was equally owned by two brothers, Elwood Hughes and Peyton Hughes. The certificate of incorporation provides for three directors. No change or amendment of this certificate has ever been executed or filed.
In December, 1946, on the death of Elwood Hughes, his widow, Lenora Hughes, his son, Elwood Hughes, Jr., and his daughter, Norma Hughes Burnett, were named testamentary trustees of his 50'% stock interest in the corporation. Thereupon Lenora Hughes, Howard L. Hughes and Peyton Hughes, together with the latter’s wife, acted as directors of the corporation. A by-law providing for four directors was passed in February, 1947. No arrangement was then made or has since been made to amend the certificate of incorporation to so provide. There is no evidence that the persons who passed that by-law ever intended to effect such a change in the certificate of incorporation.
Some time in 1956 the petitioners Senft acquired the stock of Peyton Hughes. It is suggested that the petitioners Senft by subtle and devious methods took advantage of the indigence of Peyton Hughes in order to secure a foothold in this intimate family corporation to be in a position eventually to dictate its operation and to secure the ouster of the remaining Hugheses.
In the minutes of a combined meeting of stockholders and directors held on March 15, 1957, four directors were named, to wit, Lenora Hughes, Elwood Hughes, Jr., and the petitioners, the two Senft brothers. The validity of these minutes has been attacked by the Hughes family. The minutes and the waiver of meeting are signed by Lenora Hughes and Elwood Hughes, Jr., who were then the only two directors of the corporation. They assert, and it is not denied, that they were imposed upon in signing these instruments on a Sunday. They also contend that since the ownership of the stock of Elwood Hughes, deceased, is in his estate, to which three trustees have been named and appointed, absent the signature and assent of any of the trustees, these instruments lack validity. It is the law that the approval of all the trustees is required for a decision or act binding upon the trust where the matter is one involving the exercise of discretion and this duty may not be delegated to any of the other trustees. (2 Scott, Trusts [2d ed.], § 194; Mills v. Bluestein, 275 N. Y. 317; Matter of Luckenbach, 278 App. Div. 114,119, revd. on other grounds 303 N. Y. 491 [noting exceptions p. 496 not applicable here].)
There is no question that the petitioners acted as de facto directors up to the time of the meeting of December, 1958. During that year the Hughes family felt that they had reached *191 an impasse with the petitioners. The latter took the stand that the payment of salaries and income from dividends of the corporation should be stopped and accumulated as a reserve in order to enable the corporation to be in a position to meet the need of refinancing the maturing mortgage on its property. This need is belied by the financial position of the corporation. The members of the Hughes family have relied upon and are in need of this income for their sustenance. Feeling the threatened stranglehold that the petitioners would cause them to suffer by such action, they called the meeting of December, 1958. Having participated in it, the petitioners have waived any right to question its validity for lack of sufficient notice (Matter of Frankel v. 447 Central Park West Corp., 176 Misc. 701).
Clearly the equities here predominantly favor the Hughes family. The case of Matter of American Fibre Chair Seat Corp. (265 N. Y. 416) cited by the petitioners, is distinguishable. It deals with a resolution providing for cumulative voting. It was adopted at the insistence of petitioner as a stipulation to taking his two brothers-in-law into the corporation in order to be protected against the loss of control of the business. Also the president and secretary of the corporation were directed to execute and file the proper certificate of amendment to effectuate the purpose of the resolution. Both these factors are lacking here. Moreover, in the history and status of this by-law there is no indication that it was ever intended to incorporate it into the certificate of incorporation. In this regard the equities too would have some bearing.
The petitioners were de facto directors and nothing more. Their acts as de facto directors were valid as against third parties and the public. The minutes in which they were named as directors were impotent to confer upon them de jure status. It is recognized that the mere existence of the 1947 by-law provision does not do so.
In Matter of Ringler & Co. (204 N. Y. 30, 46) the court, per Webster, J., stated: ‘ ‘ An officer de facto merely, without the legal right, has himself the benefit of a legal recognition as such, only in suits to which he is not a party. As to himself, he is a mere usurper, though the officer de facto as to third persons interested in his acts ” (italics supplied by court).
Continuing and speaking of such de facto officers the court wrote (p. 47): “ The latter, as between themselves and the corporation, were never directors or trustees either in fact or in law. [Italics added.] They became officers de facto only as to the public and third persons dealing with the corporation, ’ ’
*192 In view of the foregoing, the petitioners were never directors “ in fact or in law ” as between themselves and the corporation. The de jure directors having at a duly held meeting deposed them, they have no valid complaint against the former nor the corporation. It should be added that one of the petitioners was elected as officer at the December, 1958 meeting.
The motion is accordingly denied. Submit order.